# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VONDA K. KIRK, | No. 2:13-cv-2571-EFB |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is granted, defendant's motion is denied, and the matter is remanded for further consideration.

I.   BACKGROUND

Plaintiff filed an application for a period of disability and DIB on March 2, 2006, alleging that she had been disabled since April 9, 2004. Administrative Record ("AR") 232-237. Plaintiff's application was denied initially and upon reconsideration. *Id.* at C143-147, 151-154. On March 25, 2009, September 17, 2009, and May 25, 2010, hearings were held before administrative law judge ("ALJ") Peter F. Belli. *Id.* at 48-138. Plaintiff was represented by

/////

counsel at the hearings, at which she and a vocational expert ("VE") testified.[1] *Id.* On July 16, 2010, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[2] *Id.* at 33-42. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since April 9, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*).

\* \* \*

---

[1] While a vocational expert was present at the first two hearings, vocational expert testimony was only given at the May 25, 2010 hearing.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3. The claimant has the following severe impairments: degenerative cervical disk disease with disk protrusion and mild bilateral foraminal narrowing at disk C3-4, as well as right upper extremity radiculitis corresponding to C5-6 disk bulge; bilateral carpal tunnel syndrome, trigger thumb and tenosynovitis of the right first dorsal compartment status-post bilateral carpal release surgeries and bilateral trigger finger release surgeries; neurogenic bladder; depressive disorder not otherwise specified and borderline personality traits (20 CFR 404.1520(c)).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the following residual functional capacity: lift and/or carry; push and/or pull 20 pounds occasionally and 10 pounds frequently; sit 8 hours in an 8-hour workday with normal breaks; stand and/or walk for 6 hours in an 8-hour workday with normal breaks; cannot perform activities that require climbing of ladders, ropes or scaffolds; cannot perform activities involving crawling; is limited to occasional stooping, crouching or kneeling; is able to perform activities involving frequent twisting and/or flexing of her cervical spine; can occasionally perform activities above shoulder level; can frequently perform activities involving extending and/or flexing of her wrists; can perform gross manipulation, grasping, and/or fingering on a frequent basis; no limitations on her ability to understand, remember and carryout short, simple instructions; moderate limitations in her ability to understand, remember and carry out detailed job instructions; has no limitations on her ability to make simple, work-related decisions; has a slight limitations in her ability to make judgment on detailed work-related decisions; is capable of occasional exposure to the public; has a slight limitation in her ability to interact appropriately with supervisors and coworkers; moderate limitations in her ability to respond normally to work-related pressure/stress and/or changes in her work routine.

* * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

* * *

7. The claimant was born on December 7, 1965 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school equivalency education and is able to communicate in English (20 CFR 404.1564).

/////

3

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can performed (20 CFR 404.1569 and 404.1569(a)).

\* \* \*

11. The claimant was not under a disability, as defined in the Social Security Act, from April 9, 2004, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 36-42.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 28-29, and on October 10, 2013, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

## II.     LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

4

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.  ANALYSIS

Plaintiff argues that the ALJ erred in finding that she was not disabled prior to May 1, 2006. Specifically, plaintiff argues that the ALJ erred by (1) finding certain impairments to be not severe at step two and ignoring some of plaintiff's impairments; (2) rejecting her treating and examining physicians' opinion; (3) discrediting her subjective complaints without legally sufficient reasons; (4) incorrectly assessing plaintiff's RFC; and (5) relying on the VE's testimony that did not accurately reflect plaintiff's functional limitations. ECF No. 16 at 17-38.

A. The ALJ failed to Properly Consider All of Plaintiff's Impairments

Plaintiff first argues that the ALJ erred at step two of the sequential evaluation process by failing to find that her low back pain and incontinence were severe impairments. ECF No. 16 at 17-21. Plaintiff further contends that the ALJ's erred in failing to consider other impairments, including her migraines, fibromyalgia, myofascial pain syndrome, and borderline intellectual functioning. ECF No. 16 at 20-23.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were not taken into account. *Yuckert*, 482 U.S. at 153. At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1502(c). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p). At the second step the plaintiff has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show his impairments are

/////

/////

5

1  severe and expected to last for a continuous period of twelve months. *Ukolov v. Barnhart*, 420

2  F.3d 1002, 1004–05 (9th Cir. 2005); *see also* 20 C.F.R. §§ 404.1508, 404.1509,

3  404.1520(a)(4)(ii).

4      At step-two the ALJ found that plaintiff had the following severe impairments:

5  degenerative cervical disk disease with disk protrusion and mild bilateral foraminal narrowing at

6  disk C3-4, as well as right upper extremity radiculitis corresponding to C5-6 disk bulge; bilateral

7  carpal tunnel syndrome, trigger thumb and tenosynovitis of the right first dorsal compartment

8  status-post bilateral carpal release surgeries and bilateral trigger finger release surgeries;

9  neurogenic bladder; depressive disorder not otherwise specified and borderline personality traits.

10  AR 35.

11      The ALJ's decision contains no explicit explanation for his step-two findings. However,

12  in assessing plaintiff's residual functional capacity at step-four, the ALJ suggests that he found

13  one or more impairments to be non-severe. In addressing plaintiff's lower back pain the ALJ

14  stated, without detailed explanation, "[t]he undersigned finds that the claimant's alleged lower

15  back pain is not severe for purposes of the Social Security Act." *Id.* at 39. The ALJ stated that

16  plaintiff "did not allege to her treating physician that she was suffering from severe lower back

17  pain or physical limitations imposed by chronic lower back pain. Nor are there any objective

18  findings showing the claimant having significant abnormalities in her lumbar spine." *Id*. at 39.

19  However, medical notes from November 22, 2005 indicate that plaintiff complained of ongoing

20  neck and back pain, for which she was prescribed Vicodin. *Id*. at 421. On January 23, 2006,

21  plaintiff went to her doctor after being involved in an altercation. *Id*. at 422. She reported that

22  she gets severe low back pain, and was concerned that it would get worse because of the

23  altercation. *Id*. A week later plaintiff reported that her low back pain was worse the prior week,

24  but was feeling better that day. *Id*. at 690. In October 2009, plaintiff presented to the emergency

25  room with complaints of acute onset of back pain. *Id*. at 1036-1038.

26      Clearly, the record demonstrates that the plaintiff sought treatment due to severe lower

27  back pain, notwithstanding the ALJ's contrary conclusion. Furthermore, the ALJ's finding that

28  plaintiff's reports of pain are not substantiated by objective medical evidence is not a sufficient

basis for finding that her back pain was non severe. As discussed in greater detail below, plaintiff was diagnosed with fibromyalgia, which very well could account for the reason for why plaintiff's complaints of pain were not substantiated by objective laboratory or x-ray results. Accordingly, the ALJ's finding that plaintiff's lower back pain had no more than a minimal impact on her ability to function is not supported by substantial evidence.

Plaintiff next argues that the ALJ erred in failing to find that her bowel and bladder incontinence were severe impairments. ECF No. 16 at 19-20. Contrary to plaintiff's contention, the ALJ found her bladder incontinence to be a severe impairment at step two. The ALJ specifically found that plaintiff's severe impairments included neurogenic bladder. AR 35. Furthermore, the ALJ considered this impairment in assessing plaintiff's RFC. In finding the plaintiff's incontinence would not interfere with her physical functioning, the ALJ relied on an April 20, 2006 note from her treating urologist, Dr. Susan Goldberg. *Id*. at 38. Dr. Goldberg states that plaintiff's "neurogenic bladder, urethral stenosis and mixed urinary incontinence . . . would not preclude physical activity such as sitting, standing, walking, lifting, carrying, handling objects, hearing or speaking." AR 786. However, she further stated that "[t]ravel may be limited by need for frequent voiding." *Id*. While the ALJ used the term "neurogenic bladder" instead of "bladder incontinence," it is clear that he found plaintiff's bladder impairment to be severe at step-two.[3]

However, plaintiff also reported experiencing bowel incontinence, as well as problems with constipation. Plaintiff testified that she experiences periods of uncontrolled bowel movements. *Id*. at 90. She also testified that also experiences prolonged periods of constipation requiring her to take laxatives. *Id*. at 89. She reported that due to her bowel problems she must always be near a bathroom. *Id*. Medical records indicate that plaintiff's physician Dr. Finch treated her for her bowel issues. *Id*. at 961. Indeed, Dr. Finch concluded that plaintiff was

---

[3] The court notes that the ALJ purported to credit Dr. Goldberg's opinion in full. However, Dr. Goldberg specifically stated that plaintiff should avoid travel due to the need for frequent voiding. AR 786. The ALJ did not consider how plaintiff's need to take frequent restroom breaks throughout the day would impact her ability to work. As discussed below, this matter must be remanded. On remand, the ALJ shall specifically consider how this impairment impacts plaintiff's ability to work.

disabled and that her bowel issues were a contributing factor. *Id*. at 943.  The ALJ, however, did not find that plaintiff's bowel impairment was severe at step-two.  In fact, the ALJ did not even discuss this impairment in his decision.  As the ALJ did not even consider this impairment, the court cannot find that the ALJ's failure to find plaintiff's bowel impairment non-severe was harmless.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) ("In determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medical determinable impairments, including those that are not severe.").

Plaintiff further argues that the ALJ failed to consider the impact her migraines had on her ability to work.  Treatment records from 2006 and 2007 reflect that plaintiff was prescribed medications for headaches and migraines.  AR 963-964, 976-977, 982-989, 992, 996, 998.  In September 2009 and April 2010, plaintiff went to the emergency room due to her headaches.  *Id*. at 1034-1035, 1041-1043.  Plaintiff also testified that she experiences pain due to a bulging cervical disk, which causes her to have severe migraines.  *Id*. at 85.  Plaintiff also reported to examining physician Dr. Cormier that she has "trouble with migraine headaches three or four times per week."  AR 1010.  Furthermore, third party statements submitted by plaintiff's two sons and husband substantiated plaintiff's allegations of experiencing severe and frequent headaches and migraines.  *Id*. at 290-292.  Despite all the evidence relating to plaintiff's migraine headaches, the ALJ's decision completely failed to mention headaches or migraines.

Plaintiff also argues that the ALJ failed to consider her fibromyalgia and/or myofacial pain syndrome.  ECF No. 16 at 21-22.  Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue."  *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).  "Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease."  *Id*. at 589–90.  "The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms."  *Id*. at 590.  "Objective physical signs, laboratory results, and x-ray results are generally negative, and because the majority of patients appear tense and anxious and have no recognizable objective basis for symptoms, the syndrome is often considered

psychogenic." *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 872-972 (9th Cir. 2004). "Myofascial Pain Syndrome is classified under Fibromyalgia, as one of common nonarticular disorders characterized by achy pain, tenderness, stiffness of muscles, areas of tendon insertion, and adjacent soft tissue structures." *Beauclair v. Barnhart*, 453 F. Supp. 2d 1259, 1276 (D. Kan. 2006) (citing *The Merck Manual of Diagnosis and Therapy*, 481 (Mark H Beers, M.D. & Robert Berkow, M.D. eds., 17th ed. 1999)).

Medical records indicate that Dr. Finch, plaintiff's treating physician, diagnosed plaintiff with fibromyalgia. AR 948-949. Plaintiff also sought treatment from Dr. Ajay Harpavat, who diagnosed plaintiff with myofascial pain syndrome. *Id*. at 478. Furthermore, plaintiff testified that her fibromyalgia causes her severe pain with muscle aches over her whole body. *Id*. at 93. The ALJ's decision acknowledges that plaintiff testified that she "suffered from pain throughout her whole body as a result of fibromyalgia." AR 38. However, the ALJ's decision contains no other discussion of plaintiff's fibromyalgia or myofascial pain syndrome, or an indication that the ALJ consider these impairments in assessing plaintiff's RFC. This is especially troubling given the ALJ's rejection of plaintiff's testimony on the basis that it was not supported by objective findings.

Lastly, plaintiff argues that the ALJ failed to consider her diagnosis for borderline intellectual function, which was assessed by examining physician Dr. Sid Cormier. ECF No. 16 at 22-23. The ALJ discussed Dr. Cormier's evaluation of plaintiff and noted that he diagnosed plaintiff with, among other things, borderline intellectual function. AR 40. While the ALJ ultimately rejected Dr. Cormier's opinion regarding plaintiff's functional limitations, the ALJ did consider Dr. Cormeris' diagnosis and opinion. Furthermore, as discussed below, the ALJ did not err in rejecting Dr. Cormeris' opinion. Thus, contrary to plaintiff's contention, the ALJ did consider whether plaintiff had borderline intellectual functioning.

In summary, given the ALJ's failure to consider several of plaintiff's impairments, the matter must be remanded for further consideration.

/////

/////

B. The ALJ Properly Weighed the Medical Opinion Evidence of Record

Plaintiff also argues that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of her treating physician Dr. Finch, treating chiropractors Dr. Richardson and Dr. Kobe, and examining psychologist Dr. Sid Cormier. ECF No. 16 at 23-27.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

1. Dr. Finch

In a letter dated June 26, 2007, Dr. Finch stated that plaintiff had not worked for the past six months due to chronic low back pain, chronic narcotic pain medications, and constipation. AR 943. He opined that plaintiff's prognosis for returning to work was poor, especially in light of her medication regimen. *Id.* "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144,

1149 (9th Cir. 2001) *see also* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Dr. Finch's letter does not include an opinion regarding plaintiff's specific functional limitation. Rather, he only gave an opinion that went to the ultimate issue of disability. As this determination is reserved for the Commissioner, the ALJ did not err in rejecting this opinion.

### 2. Drs. Richardson and Kobe

The record also contains a letter dated May 16, 2006, from Gary Richardson, plaintiff's treating chiropractor. Dr. Richardson stated that plaintiff was under a total temporary disability, and that she was to remain off work indefinitely until her workers' compensation case was resolved. AR 581. Plaintiff's other treating chiropractor, Chris Kobe, stated in January 2008, that it was his opinion that plaintiff "has been totally disabled from work for more than five years." *Id*. at 1001. However, both chiropractors[4] only gave opinions as to the ultimate issue of disability, and did not address any specific functional limitations. Accordingly, the ALJ did not err in failing to credit these opinions.

### 3. Dr. Cormier

Plaintiff further argues that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of examining psychologist Dr. Sid Cormier, Ph.D. ECF No. 16 at 25-27.

Dr. Cormier completed a psychological evaluation on May 6, 2009. He diagnosed plaintiff with adjustment disorder with anxiety and depression; major depressive disorder, recurrent, severe but not psychotic; social phobia; borderline intellectual functioning; and personality disorder not otherwise specified with borderline and self-defeating traits. *Id*. at 1014. Dr. Cormier opined that plaintiff was seriously impaired in performing not only complex and detailed tasks, but simple and repetitive ones as well; maintaining regular attendance and performing work activities on a constant basis; maintaining a normal workday or workweek without interruption; and in dealing with typical stress encountered in a competitive work

---

[4] Chiropractors are not listed as "acceptable medical sources," *see* 20 C.F.R. § 404.1513(a), but are identified as "other sources" that may be used to show severity of impairment. 20 C.F.R. § 404.1513(d); *see also* SSR 06–3p.

1  situation. *Id*. at 1015.  He further opined that she had mild to moderate impairments in accepting
2  and remembering instructions from supervisors; moderate impairments in interacting with
3  coworkers and the general public. *Id*.  It was also Dr. Cormier's opinion that plaintiff was not
4  impaired in concentration or pace, but was moderately impaired in persistence. *Id*. at 1015.  He
5  also noted that plaintiff decompensated during the interview, and he "strongly suspect[s] that she
6  would decompensate if place[ed] in a competitive work situation at this time." *Id*.  Although Dr.
7  Cormier evaluated plaintiff at the request of the Social Security Administration, he "immediately
8  referred [plaintiff] to her local County mental health agency" and noted that with proper
9  intervention, plaintiff could achieve improvement in her functional status. *Id*.  However, he
10 concluded that "at this time she does not appear functional." *Id*.

11      Plaintiff previously underwent a comprehensive agreed medical evaluation in relation to
12 her workers' compensation claim in March 2006, which was performed by Dr. Patrick Donlon,
13 M.D. *Id*. at 644-678.  Dr. Donlon diagnosed plaintiff with depressive disorder with anxiety, long
14 duration in origin and of mild to moderate severity. *Id*. at 666.  He opined that plaintiff had
15 minimal impairments in her ability to follow instructions, perform simple and repetitive tasks;
16 slight impairments in her ability to maintain a work pace appropriate to a given workload and to
17 perform complex and varied tasks; slight impairments in her ability to relate to other people;
18 slight to moderate impairments in her ability to influence other people; and slight impairments in
19 her ability to make generalizations, evaluations, or decisions without immediate supervision. *Id*.
20 at 668-669.

21      Plaintiff also underwent a complete mental evaluation in August 31, 2006, performed by
22 Dr. Mark Pierce, Ph.D. *Id*. at 813-817.  Dr. Pierce diagnosed plaintiff with depressive disorder
23 not otherwise specified and borderline personality traits. *Id*. at 816.  Dr. Pierce opined that
24 plaintiff was capable of performing simple and repetitive-to-medium-demand work and could
25 adapt to minimal changes in a work environment. *Id*.  He further opined that plaintiff would have
26 mild-to-greater difficulty working effectively with others.  It was also his opinion that plaintiff
27 could remember and comply with simple and two part instructions and could adequately
28 concentrate for a mildly reduced-demand regular work schedule. *Id*.

In assessing plaintiff's mental limitations, the ALJ credited Drs. Donlon and Pierce's opinions, while rejecting Dr. Cormier's opinion. The ALJ stated that he was "unable to fully credit the opinions of [Dr. Cormier], as they are inconsistent with the record as a whole." *Id*. at 40. Plaintiff argues that this reason is not legally sufficient. ECF No. 16 at 26. Plaintiff contends that rejecting an opinion merely because it was inconsistent with another medical opinion is not a legally sufficient basis. *Id*.

While an ALJ is usually required to give specific and legitimate reasons for rejecting a contradicted examining opinion, *see Lester*, 81 F.3d at 830, the instant case is not the typical scenario where the examining opinion is contracted by an opinion from a non-examining physician. The record in this case contains opinions from three examining sources, which are entitled to equal weight. Under these circumstances, the ALJ was permitted to resolve the conflict and adopt the opinions from Drs. Donlon and Pierce over Dr. Cormier's opinion. *See Sheffer v. Barnhart*, 45 F. App'x 644, 645 (9th Cir. 2002) ("Because the ALJ was entitled to resolve this evidentiary conflict between conflicting opinions of equal weight, he did not need to provide specific and legitimate reasons for rejecting [two treating physicians' opinions]."); *Watson v. Barnhart*, 2003 WL 21838474, *4 (N.D. Cal. Aug.1, 2003) (finding that ALJ decision was consistent with the opinion of one of the plaintiff's treating physicians and, therefore, the ALJ "did not need to articulate specific and legitimate reasons for disregarding [another treating physician's] opinion."); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Plaintiff, citing to *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985), argues that Dr. Cormier's opinion is entitled to greater weight because he examined plaintiff after she experienced a head injury in 2007 and "it was the most recent assessment of [plaintiff's] mental conditions." ECF No. 16 at 27. As acknowledged by plaintiff, *Stone* held that where a plaintiff's condition is progressively deteriorating, the most recent medical evidence is the most probative. 761 F.2d at 532. Plaintiff, however, cites to no evidence that her mental condition was
/////

1    progressively deteriorating.  Accordingly, plaintiff has failed to demonstrate that Dr. Cormier's

2    more recent opinion is more probative than the opinions given by Drs. Donlon and Pierce.

3            Accordingly, the ALJ did not err in weighing the medical opinion evidence of record.

4            C.  <u>The ALJ Failed to Give Legally Sufficient Reasons For Discounting Plaintiff's</u>

5            <u>Subjective Complaints and Statements Made by Third Parties</u>

6            Plaintiff next argues that the ALJ erred by failing to give clear and convincing evidence

7    for discounting her subjective complaints.  ECF No. 16 at 27-32.

8            In evaluating whether subjective complaints are credible, the ALJ should first consider

9    objective medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341,

10   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of impairment, the ALJ may

11   then consider the nature of the symptoms alleged, including aggravating factors, medication,

12   treatment and functional restrictions.  *See id*. at 345-347.  The ALJ also may consider: (1) the

13   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

14   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

15   prescribed course of treatment, and (3) the applicant's daily activities.  *Smolen*, 80 F.3d at 1284.

16   Work records, physician and third party testimony about nature, severity and effect of symptoms,

17   and inconsistencies between testimony and conduct also may be relevant.  *Light v. Soc. Sec.*

18   *Admin*., 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly

19   debilitating medical problem may be a valid consideration by the ALJ in determining whether the

20   alleged associated pain is not a significant nonexertional impairment.  *See Flaten v. Secretary of*

21   *HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own

22   observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

23   substitute for medical diagnosis.  *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990).

24   "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

25   reasons for rejecting the claimant's testimony must be clear and convincing."  *Morgan*, 169 F.3d

26   at 599.

27           As discussed, plaintiff testified that she has a bulging disk, which causes severe migraines,

28   osteoarthritis, fibromyalgia, and congenital problems, including urinary and bowel problems as

well as issues with her kidneys. AR 63-68, 85. She stated she has had surgery on both her hands for her carpel tunnel syndrome, but reported that the surgery only temporarily alleviated her pain. *Id*. at 65, 91-93. She also reported suffering a concussion in 2007. *Id*. at 69-70. She stated that she experiences pain in her neck, shoulders, hip, and lower back, which she described as constant. *Id*. at 82-83. She reported that she takes prescription medication for the pain, but claimed that it sometimes was not strong enough. *Id*. at 81. She also related that over the last five years her urinary incontinence has increased, and that she has to carry bags of clothes in case she has an accident. *Id*. at 88. She testified that at times she experiences uncontrolled bowel movements, while at other times she has to take laxatives for her constipation. *Id*. at 89-90. She further testified that her fibromyalgia caused whole body aches and severe pain. *Id*. at 93-94.

Plaintiff also claimed that she had difficulty getting along with others and was frequently emotional and sad. *Id*. at 95. She testified that she has frequent anxiety attacks and that her physical and mental impairments caused her to be late to work and miss approximately four or five days a month. *Id*. at 96-98.

The ALJ found that plaintiff's various allegations of limitations and pain were not supported by the medical evidence. *Id*. at 38-40. This reason alone, however, cannot serve as a basis for discrediting plaintiff's testimony. *See Burch*, 400 F. 3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").[5] Further, the ALJ did not give any other reason for discounting plaintiff's subjective complaints. Accordingly, the ALJ failed to give legally sufficient reasons for discounting plaintiff's credibility.

/////

---

[5] The ALJ stated that plaintiff has "received a broad range of conservative treatment, including trigger point injections in her cervical spine, bilateral carpal tunnel release surgery and trigger thumb release surgery." AR 38. A fair reading of the ALJ's opinion does not support the finding that the ALJ rejected plaintiff's allegations because she only received conservative treatment. Indeed, the Commissioner does not argue in her motion for summary judgment that this was a reason given by the ALJ for rejecting plaintiff's credibility. However, to the extent the ALJ intended to reject plaintiff's testimony based on conservative treatment, the court disagrees with the ALJ's conclusion that trigger point injections and surgery constitute "conservative treatment."

Plaintiff also contends that the ALJ failed to give legally adequate reasons for rejecting third-party statements submitted by her son and husband. ECF No. 16 at 33. Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001). An ALJ must consider this testimony in determining whether a claimant can work. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. § 416.913(d)(4); *Smole*n, 80 F.3d at 1288. However, in doing so the ALJ is free to evaluate that testimony and determine the appropriate weight it should be given in the light of the other evidence. To discount the testimony of a lay witness, the ALJ must "give reasons that are germane to each witness." *Id*. at 1053; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ summarized the statements given by plaintiff's two sons and husband, but made no statement concerning what weight he accorded their statements. As their statements largely corroborated plaintiff's allegations, it is clear that the ALJ rejected them. However, he did so without providing any reason at all. As such, he failed to articulate germane reasons for discounting their statements.[6]

IV.    CONCLUSION

The ALJ failed to consider all the evidence of record and also failed to apply the properly legal standard. Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further consideration consistent with this order; and

4. The Clerk is directed to enter judgment in the plaintiff's favor.

DATED: March 31, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[6] As the matter must be remanded for further consideration for the reasons discussed herein, the court declines to address plaintiff's remaining arguments.

16